STATE OF MISSOURI at the Relation of JENNIE KING and JENNIE KING, Guardian and Curator for JESSE KING, MILDRED ELLEN KING and DOROTHY KING, Respondent, v. BOARD OF TRUSTEES OF THE FIREMAN'S PENSION FUND OF KANSAS CITY, MISSOURI, Composed of A. F. EVANS, M. F. FLYNN, etc., Appellant.

Kansas City Court of Appeals, February 21, 1916.

1. MUNICIPAL CORPORATIONS: Certiorari, Writ of: Firemen's Pension Fund: Meaning of Statute: Firemen Killed While off Duty. A member of the City Fire Department obtained a leave of absence for twelve hours. During this time he visited a saloon and, while in a purely personal quarrel of his own, entirely disconnected from any matters of the department, was shot and died a few days later without having returned to duty as a fireman. Held, that his widow and children were not entitled to receive a pension under section 9892, Revised Statutes, 1909.

2. ———; ———: ———. Where a statute contains three clauses which give a pension: 1, if the fireman be "killed while in the performance of duty" or 2, die as the result of "injury received in the line of his duty" or 3, die as the result of any disease contracted "by reason of his occupation as fireman" and then follows a 4th clause which says "or shall die from any cause whatever while in such service," the last-mentioned clause should not be construed as meaning that the fireman's widow and children are entitled to a pension if the fireman die from any cause whatever while a member of the fire department. The word "service" has different meanings according to the context. And the context shows that the phrase "such service" means service of the same kind as thereinbefore enumerated. And "service" in this place is not synonymous with the phrase "while a member of the City Fire Department."

3. ———: ———: ———: Statutes: Rule of Construction. To give the 4th clause of the section the meaning contended for by relatrix would eliminate or render of no use and effect the three preceding clauses. This would violate a cardinal rule of construction of a statute requiring effect to be given, if possible, to every word, clause and sentence in it; and requiring the court to reconcile the different provisions so as to make them consistent and harmonious and to give a sensible and intelligent effect to each.

4. ———: ———: ———: Policy of the Law.  It is a funda-
mental principle of the law of this State that public money shall
not be paid to a private individual for something wholly dis-
associated from the interests of the public.  And the Fireman's
Pension Fund was not intended to insure at public expense the
life of a man as an individual merely because of the fact
that he happened to be a member of the City Fire Department.
The statute does not confer the right to a pension upon the
widow and minor children of a fireman when his death arises
from a cause entirely disconnected from his services as a
fireman and at a time when he is out of the line of his duties
and engaged in a purely personal affair of his own.

5. ———: ———: ———: Public Fund: Firemen Required to
Contribute thereto: Does not Confer a Property Right in the
Pension Fund.  The fact that certain sums are retained
monthly out of the fireman's pay, and which are turned over
to the relief fund supported from the public revenues, does
not make such fund a private fund, nor rob it of its public
character.  Governmental employees have no vested rights in
a pension fund which cannot be taken away by subsequent leg-
islation.

Appeal from Jackson Circuit Court.—*Hon. Daniel E.
Bird,* Judge.

REVERSED AND REMANDED (*with directions*).

*A. F. Evans, H. C. Moore* and *A. F. Smith* for ap-
pellant,

*I. J. Ringolsky* and *H. S. Julian* for respondent.

TRIMBLE, J.—*Certiorari* issued from the cir-
cuit court of Jackson county, Missouri, to review the
record of the Board of Trustees of the Firemen's Pen-
sion Fund of Kansas City, wherein it refused to place
upon the pension list of said Fund the names of the
widow and minor children of Jesse King, deceased,
who was or had been a member of the City Fire De-
partment.

The return shows that the board refused to place
the names on the Pension List ''for the reason that

Jesse King's death resulted from injuries received in a fight in a saloon while off duty.'' It seems that King had asked and had been granted a special leave of absence as a fireman for twelve hours, and, during the time of such absence, he became engaged in a quarrel with another negro over a purely personal controversy, in no way connected with the business of the fire department, and was shot, receiving injuries from which he died several days thereafter.

The Firemen's Pension Fund and the board controlling and administering the same were authorized by the Act of March 25, 1903 (Laws of Missouri 1903, page 86, et seq.), now appearing in the Revised Statutes, 1909, as sections 9879 to 9903 both inclusive.

The circuit court quashed the record of the board and it prayed an appeal to the Supreme Court on the theory that the trial court, in overruling the board's point that its action was not subject to review because of a provision to that effect in section 9886, Revised Statutes 1909, had held said provision to be unconstitutional. The appeal, however, was allowed to this court, and on motion we transferred the case to the Supreme Court, but that tribunal ordered it retransferred.

Many preliminary question are raised concerning matters of procedure and the right to a change of venue which the board applied for and failed to get; also the power of the circuit court to review the action of the board because of the aforesaid provision in said section 9886. However, our views upon the main and ultimate question involved in the case make it unnecessary to decide these preliminary points or objections raised by the board, for, if it be found that the board acted correctly, then such result disposes of the case and renders the other objections to the judgment immaterial and academic so far as this case is concerned.

The correctness of the board's action depends upon what is the true construction and meaning to be

placed upon section 9892, Revised Statutes 1909, which reads as follows:

"If any member of such fire department shall, while in the performance of his duty, be killed or die as the result of an injury received in the line of his duty, or of any disease contracted by reason of his occupation as fireman, *or shall die from any cause whatever while in such service,* and shall leave a widow or child or children under the age of sixteen years surviving, said board of trustees shall direct the payment . · . . monthly to such widow, while unmarried . . . and . . . for each child, until it reaches the age of sixteen years, such sum of money as may be determined by said rules and regulations."

The board contends that this section does not authorize the granting of a pension to a fireman's widow and minor children unless his work, duties or occupation as a fireman sustain some relation to his death; that the fact that he was in the line of his duties as a fireman must have something to do with his death.

The construction claimed by relatrix is based upon the clause in said section which we have italicized. Her contention is that this clause means that if a fireman dies from any cause whatever *while he is a member of the fire department,* then his widow and minor children under sixteen are entitled to be placed on the pension list. In other words, his death does not have to be related in any manner whatever to the performance of his duties as a fireman. If he is a fireman and his death occurs, then no matter how, nor where, nor when, that death came about, his widow and children get a pension.

It seems to us that the meaning relatrix extracts from the words "or shall die from any cause whatever while in such service" is obtained by giving to the word *"service"* a limited and arbitrary meaning. Arbitrary because it is given without reference to the meaning shown by the context. A word having sev-

eral meanings, or shades of meaning, must be given that meaning which the context shows it was intended to have. Now the word "service" may mean. "1. The act of serving; labor performed in the interest and under the direction of others; the work of a slave, hired man, or employee . . . 2. Any work done for the benefit of another; the act of helping another . . .; hence, also, a benefit or advantage conferred . . . 3. The state of being a servant; the position of a servant; employment in the interest of a person or of a cause . . . 4. The official duty or work required of one; *hence, also, any system or organization instituted for the accomplishment of such duty; as, military or naval service; the consular or the diplomatic service.*" And many other meanings. [New Standard Dictionary.] Relatrix takes the last meaning given above, which we have put in italics, and applying it to the word "service," makes it mean the system or organization instituted by the city for the extinguishment of fires, or, in other words, the City Fire Department. With this meaning given to the word "service" the clause in the statute should be understood and interpreted as if it read "or shall die from any cause whatever while in the City Fire Department, or while a member of such City Fire Department." But suppose some of the other meanings are given to the word "service." Take for instance the first one above, "the act of serving; or the work of a . . . hired man or employee" or the first subdivision of the fourth definition given above "the official duty or work required of one." The statutory clause would then read "or shall die from any cause whatever while in the act of serving as a fireman or doing the work of a fireman or while in the official duty or work required of a fireman." We do not mean to hold that the word "service" as used in this section is to be limited to these two meanings last given. We cite these two in contradistinction to the

meaning given it by relatrix merely to show that it has *different* meanings according to the sense in which it is used. And the sense in which it is used must be determined from the context.

What then is that meaning as shown by the context? In the first place, a careful reading of the entire act does not reveal any instance where the word "service" is used in the sense of the system or organization instituted by the city for the extinguishment of fires. It is never used to express the fact that the fireman is a member of the fire department, that is, in the sense one uses the terms when speaking of a man enlisted in the army and says: "He is in the military service." The statute nowhere uses the word in that sense but always in the sense of the labors, duties and things to be performed by a fireman. The statute, in expressing the idea that the fireman belongs to a branch of the city's governmental activities, never says "in the fire service of the city" but always the words "member of the City Fire Department" are used. In the next place, the other clauses in section 9892 show that the clause "or shall die from any cause whatever while in such service" does not have the scope and meaning relatrix would ascribe to it. These other clauses give a pension, first, if a member of the fire department be killed *"while in the performace of his duty,"* or, second, die as the result of an injury received *"in the line of his duty,"* or, third, die as the result of any disease contracted *"by reason of his occupation as fireman."* In all three of these the death must sustain a relation of some sort to the duties and work of a fireman, either a *causal* relation or a relation of *time of occurrence* with performance. Why should these limitations be carefully inserted in each of these three clauses if the Legislature intended by the next clause to give a pension in case of the death of a fireman without regard to whether the death had any connection whatever with the performance of the duties of a fire-

man? The last clause if it means what relatrix says it does, would give a pension to the widow and minor children of a deceased fireman no matter whether he was killed "while in the performance of his duty" or not. It would also give a pension if the fireman was injured and died from such injury while still a fireman no matter whether such injury was received "in the line of his duty" or was received while he was bent upon a purely personal matter and attempting to perpetrate a crime. If he died from a disease it would not make any difference whether that disease was "contracted by reason of his occupation as fireman" or not, so long as he was still a member of the fire department, and this section deals only with *members*. Hence, it would seem that to give the italicized clause in controversy the meaning ascribed to it by relatrix, is to eliminate entirely the three preceding clauses of the section or to render them meaningless or reduce them to useless surplusage. This would violate a cardinal rule in the construction of statutes. "It is a cardinal rule in the construction of statutes that effect is to be given, if possible, to every word, clause and sentence. It is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent and harmonious, and to give a sensible and intelligent effect to each." [36 Cyc. 1128, 1129; Strottman v. St. Louis etc. R. Co., 211 Mo. 227, l. c. 251.] So that the phrase "while in such service" is not synonymous with "while a member of the fire department." But the word "service" means the *same service* referred to in the three preceding clauses, that is to say, a service rendered "in the line of his duty" or "by reason of his occupation as a fireman." The word "service' as here used means the act of serving, the labor performed or the duties required of a fireman, and is not used to refer to or designate a department of the city's activities. The word "such," which precedes and modifies the word

State, ex rel. v. Board of Trustees.

"service," shows this to be true. Because the word "such" is essentially a term of comparison. It means "of that kind; of the same or like kind; identical with or similar to something specified." [New Standard Dictionary.] So that when the statute contains several clauses, each containing a provision that the fireman must be, at the time, in the line of his duties and attending to them, and then follows it with another clause containing the provision "while in such service," the word "such" means that the *service* must be *of the same kind* as that which has been enumerated.

It also appears that the construction sought to be placed by relatrix upon the italicized clause of said section is contrary to the whole intent and spirit of the Fireman's Pension Act. The provisions therein for a *pension* are not the same as, nor do they partake of the nature of, an unlimited contract of life insurance. The *pension* created by the statute has in it the idea of an allowance because of death or disability arising from, or connected in some way with, the performance of the duties in the line of a hazardous occupation in the interest of the public. The statute did not create a system of life insurance insuring a fireman against every hazard of life to which men as individuals are exposed, but only to those hazards which arise from the performance of, or while he is performing, or is in the line of, his public duties. Section 9891 provides that if a fireman becomes permanently disabled he may be retired "from service" that is, from the requirement to perform the duties of a fireman, and shall receive a pension. But, his disablement must be from something occurring "while in the performance of his duty" or "by reason of service in the department" and such disability must have been "contracted in the service of such fire department.' (The word "service" as here used is clearly not equivalent to membership in the department.) And so on throughout the Act, the disability, injury, inca-

pacity, or whatever it is, must *arise from,* or be connected in some way with, the performance of the duties of a fireman.   Clearly, if Jesse King had been merely *disabled* when he was shot in his quarrel, *he* could not have claimed a pension.   But, according to his widow's contention, since he was *killed, she* can.   The evident spirit and purpose of the act does not bear this out.   It provides two funds, the "relief fund" and the "retirement fund."   Public moneys can be used to replenish the former, but not the latter, which must come from contributions and other private sources. Firemen that are disabled in the performance of their duties, or who, in the line of their duty, have contracted something which results in disability, may be pensioned out of the "relief fund," and so may their widows and children under sixteen, if death, instead of disability, comes in the line of duty.   Section 9894 provides for the retirement and pensioning of a fireman after he is fifty years old and has served twenty-two years in the fire department.   This section says nothing about *disability* as a prerequisite to obtaining the pension, unless indeed disability is implied by age and length of service.   It also provides that if such fireman, retired through length of service, dies, his widow, if married to him before retirement, and his children under sixteen, may be pensioned.   But pensions provided in this section are payable out of the "retirement" fund and not out of the "relief" fund, which is maintained out of public moneys.   This section is the *only* section which does not contain a provision requiring the disability or death of the fireman to be in consequence of or while in performance of duty as a prerequisite to the pension before it can be granted; and the pension it provides is payable only out of the private fund. *But the pension provided for in section* 9892, *and which relatrix herein is seeking, is payable out of the fund derived from public moneys.*   Section 9895 provides a pension for the widows of a fireman who dies

after being retired and pensioned, under section 9861 "by reason of injuries sustained or disease contracted while serving as a member of the fire department," but this pension is likewise payable out of *private* funds. So that throughout the entire act, so far as it authorized the use of public money, great care is exercised to authorize its use *only* in those instances where the occasion calling therefor *arose from the work done for the public or while such work was being done.* Section 47, article 4 of the Constitution, empowers the Legislature to authorize the creation, maintenance and management of a fund for crippled and disabled firemen and for the relief of widows and minor children of deceased firemen "said fund to be taken from the municipal revenue of such cities." Doubtless the distinction maintained throughout the act between the payments to be made out of the "relief" fund and those to be made out of the "retirement" fund, may have been preserved lest the constitutional provision did not give power to take public money to pay either a fireman who has been retired for length of service but who has not been disabled, or the widow and orphans of a fireman who dies after he has been retired and therefore after he is no longer in the service of the city. But the same reason, namely, fear of a lack of constitutional power, is equally efficacious in causing the Legislature to limit the pensions paid out of funds created by public money to those cases where the disability or death was caused by the performance of, or occurred in the line of, public duties, or while they were being performed, and not to extend such pensions to cases where the death was wholly disconnected from public duties either in point of time or with respect to matters of causal relation. It is a fundamental principle of the law of this State that public money shall not be paid to a private individual for something wholly disassociated from the interests of the public itself. But if relatrix's construction of

the clause in controversy is correct, then the life of a man *as an individual,* is insured at public expense merely because of the fact that he happened to be a member of the City Fire Department. Such is not the general policy of our law, and therefore, we do not think the statute in question confers a right to a pension upon the widow and minor children of a fireman when his death arises from a cause entirely disconnected from his services as a fireman and at a time when he is out of the line of his duties and engaged in a purely personal affair of his own. [Scott v. Mayor and Aldermen of New Jersey, 68 N. J. L. 687.]

It is true section 9888 authorizes the retention from a fireman's pay of certain sums monthly which go into the relief fund in addition to the other public moneys constituting that fund, but if this has any tendency to give the fireman a *quasi*-property interest in such fund it does not do so beyond the terms of the law providing for the pension. The fact that the fireman must contribute to the fund does not broaden his rights or the rights of his widow and children to the pension. It does not authorize the awarding of a pension where the death occurs under circumstances which are not within the terms of the law granting the pension. Governmental employees can have no property rights in a pension fund, nor can those claiming under them have any such rights except their claims be based upon and come within the laws governing the fund. [People ex rel. v. Coler, 173 N. Y. 103.] The retention by the city of a part of the fireman's salary and the placing of the same in the "relief" fund does not make the same any the less a public fund, nor do the moneys going into said fund cease to be public moneys. [State ex rel. v. Board of Trustees Policemen's Pension Fund, 121 Wis. 44.] Notwithstanding the payment of a part of the salaries of the firemen into a fund the same remains a public fund, and the payor of

such sums has no vested right therein which cannot be taken away by subsequent legislation. [Pennie v. Reis, 132 U. S. 464.]

It is urged that the three clauses of section 9892 specifying the death of a fireman killed in performance of duty, dying from injuries received therein, or from disease contracted by his occupation, covers every possible cause of death arising as a consequence of the performance of his duties, and, for this reason, the next clause is mere surplusage and has no function to perform if it is to be given the interpretation we place upon it. It might be retorted that relatrix's construction makes the other three clauses mere surplus words. But we do not think our construction eliminates the fourth clause from said section or makes it of no effect. It may have been inserted out of precaution lest some circumstances might arise wherein the death would occur *while* the fireman was in the line of his duty, and yet not come within the purview of the three preceding clauses. A fireman might die *while in the performance* of his duties and yet his widow have difficulty in proving that his death *arose from or was caused* thereby. In such case, the clause now in controversy would relieve her of the necessity of proving that such was the fact. And the clause may have been inserted for this very purpose. In other words, the clause may be a Legislative declaration that if the death occurred *while* he was in the act of performing the work of a fireman or in the line of his duties, then the pension would be granted without regard to the cause of death. We do not say that such is its purpose, it being unnecessary to do so in this case, since clearly relatrix's husband's death did not occur *while* he was in the performance of his duties. We mention it merely as an illustration of the fact that the three preceding clauses do not necessarily cover all the varieties of their class, and, therefore, do not come within an exception rendering the

doctrine of *ejusdem generis* inapplicable. [31 Cyc. 1122.]

The construction placed by us upon said section 9892 renders it unnecessary for us to go into the question whether King was or was not a member of the fire department at the time he died. The return of the board includes certain matters which allege that King, after entering into the quarrel in the saloon, went away and procured a pistol and, upon returning to and entering the saloon, was shot and injured, and that upon learning of such conduct upon his part, the board suspended him, and that afterwards, during such suspension and before he had been reinstated or had ever returned to his work as a fireman, he died from the wound he received. The board argues from this that he was, therefore not a member of the department at the time he died, and that relatrix is not entitled to a pension because he was suspended prior to his death and was in suspension when that occurred. Our construction of the section and the spirit and meaning of the act, however, make it unnecessary to say whether his suspension has any bearing upon relatrix's right or lack of right to a pension. We do not put our denial of her right upon that ground.

It results from the foregoing that the judgment of the trial court quashing the record of the board should be reversed and the case remanded with directions to quash the writ of *certiorari* and dismiss relatrix's petition. It is so ordered. All concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—Respondents, in their motion for rehearing, say that this court refused to permit an oral argument of the case when it was again set for hearing in this court after the Supreme Court had retransferred it. In this, respondents are in error. This court did not refuse to permit an argument at the second hearing.

When the case was set for hearing the last time, it was called and counsel for both sides appeared at the counsel table. It was stated that the case was orally argued at the first hearing thereof and was by this court transferred to the Supreme Court. Whereupon the court inquired whether, in view of the fact that the case had been argued once before, counsel cared to argue it again? To this counsel for appellants replied that they did not care to reargue it and were perfectly willing to submit the case without further argument. To which counsel for respondents immediately, and without objection either in manner or word, consented. The case was thereupon submitted and counsel for both sides gathered their papers, bowed smilingly to the court and to each other and departed, apparently in the best of humor that the arduous task of a reargument of the case was avoided.

The court fully recognized that the parties had a right to argue the case if they desired to do so; and had such desire been even intimated by either side an argument would have been heard. There was not the slightest intimation to the court that the agreement to submit the case without further argument was not perfectly agreeable to both sides. Nor was there anything from the court having a tendency to indicate, that if either party desired a reargument of the case, the right to do so would not be freely and willingly recognized and granted.

This is the only point in the motion for rehearing that we care to discuss, the other points being in our view, covered by the opinion delivered herein. The motion for rehearing is overruled.