## MacLEOD et al. v. FERNANDEZ.

### No. 3354.

Circuit Court of Appeals, First Circuit.

Dec. 28, 1938.

William C. Rigby, of Washington, D. C. (B. Fernandez Garcia, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellants.

Rafael Soltero Reralta, of San Juan, P. R., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

WILSON, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico. Under the assignments of error one main question is raised, viz.: Whether Sec. 2 of the Organic Act of 1917, 39 Stat. 951, 48 U.S.C.A. § 737, is violated by Sec. 11 of Act No. 23 of July 16, 1935, Sp.Sess., which reduced the monthly pension of the plaintiff of $166.66, authorized by Sec. 1 of Act No. 73 of the Laws of 1930 upon his retirement in 1931 from service in the Insular Government, to $140 per month, as provided in Act No. 23 of the Laws of 1935, Sp.Sess. The plaintiff claims that upon his retirement he had acquired a vested right to monthly pension payments of $166.66, to which he was entitled under Act No. 73 of the Laws of 1930, and of which he could not be deprived by later enactments.

Federico Fernandez Toste, plaintiff-appellee herein, prior to 1931 had been an employee of the Insular Government of Puerto Rico for more than thirty years without interruption. His employment extended back far beyond the enactment of any law granting a pension to a retired employee. In September, 1931, he applied for his retirement as such employee in accordance with the provisions of Sec. 3, Act No. 104 of 1925, which Act as amended by Act No. 73 of May 6, 1930, entitled him to a pension of $2,000 annually for life.

Under Act No. 104 of September 2, 1925, for the retirement of officials and employees of the Insular Government, an obligation was imposed upon every official and employee of the Government to submit to a deduction of a certain percentage of his monthly salary for the maintenance of a Pension Fund.

Under the original Retirement Statute of 1923, contribution to a Retirement or Pension Fund was optional, since any official or employee could before January 1, 1924, waive the benefits of the Act and receive his stipulated salary or compensation; but under the Act of 1925 it was made compulsory on the Auditor of the Insular Government to deduct a certain percentage of the salaries or compensation of every official and employee of the Insular Government with certain exceptions, and credit the same on the books of the Treasurer to an item entitled "A Pension Fund of the Employees of the Government of Puerto Rico." The plaintiff's retirement pension was to be paid, and was afterwards paid from such Retirement Fund to which he was thus compelled to contribute.

From the year 1931, when the plaintiff retired from active service, he continued to receive monthly pension payments of $166.66 up to July 16, 1935, when, upon the enactment of the new Retirement Law for public employees, his monthly payments were reduced to $140. Thereupon the plaintiff filed mandamus proceedings in the District Court of San Juan against the Board, and the District Court decreed that the petitioner be reinstated to his original retirement pay of $166.66 and that he be reimbursed to the total amounts of the deductions made from his pension since July 16, 1935. In rendering this judgment, the court declared Sec. 11 of Act No. 73 of July 16, 1935, Sp.Sess., was a violation of Sec. 2 of the Organic Act of 1917 and was therefore "unconstitutional," since in providing the reduction of retirement pay allowed under the previous enactments it deprived the plaintiff of a vested right acquired by him, under the Acts in force when he retired.

Appeal was taken to the Supreme Court of Puerto Rico, which affirmed the judgment of the District Court and specifically held that Sec. 11 of the 1935 Act was "unconstitutional."

The statutes of Puerto Rico regulating the granting of pensions to employees retiring from active service under the Government are Act No. 22 of the Special Session of 1923; Act No. 104 of Laws of

Puerto Rico of 1925; Act No. 73 of Laws of 1930; and Act No. 23 of Puerto Rican Laws of July 16, 1935, Sp.Sess.

The Act originally creating a pension for retiring employees of the Insular Government was the Act No. 22 of Puerto Rican Laws of 1923, Sp.Sess., which provided in Sec. 1 as follows:

"The retirement of the permanent officials and employees of The People of Porto Rico is hereby established. Said retirement shall cover all officials and employees of The People of Porto Rico comprised in the classified and unclassified civil service, who prior to January 1, 1924, do not waive the benefits hereof, with the exception of the Judges of the Supreme Court, professors of the University of Porto Rico," etc.

In section 7 of the Act it was further provided:

" 'The Pension Fund of the Employees of the Government of Porto Rico' shall be formed with the proceeds of a tax of two (2) per cent on the salaries of all the employees comprised within the provisions of this Act and on the pensions granted plus interest accrued to this same fund which shall be credited monthly to the said fund; Provided, That the Auditor of Porto Rico is hereby authorized and directed from and after January 1, 1924, to deduct from the salaries of all the employees comprised in this Act, such monthly amounts as, in accord with the provisions of this section, are to be retained, and such funds shall be credited in the books of the Treasurer of Porto Rico to an item which shall be entitled 'Pension Fund of the Employees of the Government of Porto Rico.' "

Act No. 104 of Laws of Puerto Rico, approved September 2, 1925, after providing for the amount of such pension, depending on the age of the applicant and length of service, provided in Sec. 13 that from and after the date on which this Act takes effect, there *shall be deducted and withheld* from every basic salary or compensation of every officer or employee comprised in this Act, a sum equal to 3% of the basic salary or compensation of such officer or employee, which shall be credited to a Special Fund for the retirement of Employees of the Civil Service of Puerto Rico.

While by Sec. 14 of this Act every officer and employee included hereunder is understood to consent and agree to the deduction of the assessments from his salary or compensation, and the balance of his salary shall be considered as full compensation for services rendered, it is evident that the deductions under Sec. 13 are withheld with or without the consent of any such officer or employee and that such contributions are compulsory as distinguished from voluntary contributions. The Insular Supreme Court so interpreted this Act.

The law at the time of the petitioner's retirement in 1931, Act No. 22, Laws of 1923, Sp.Sess., having been repealed, was contained in Act 104 of the Laws of 1925 and in Act No. 73 of the Laws of 1930, which latter Act merely increased the retirement pension from $1,500 as provided in Act No. 104 of 1925 Laws, to $2,000 per annum.

According to the weight of authority interpreting pension acts, there does not appear to have been anything done prior to September 2, 1925, to give the petitioner a vested right to a pension that would on retirement become due him in the future. In fact, the Supreme Court of Puerto Rico expressly found that he had only an embryonic right under the Act of 1923, that is, a possible contingent right in the future, and not a vested right to receive a pension under the Act of 1923. This embryonical right, the Supreme Court of Puerto Rico also held, and we think correctly, disappeared when Act No. 22 of the Laws of 1923, Sp.Sess., was repealed by Act No. 104 of the Laws of 1925.

It is clear that the petitioner's right to a pension had not become vested before the Act No. 104 of 1925 Laws became effective. The petitioner's right to a pension must be determined, therefore, under the Act of 1925, as amended by the Act of 1930, which, as stated above, merely increased the amount of the retirement pension to which he was entitled.

His future rights to a pension at the time of his retirement were no different from the pensioner's in the case of Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426, except that the pension in that case was payable in a lump sum; or in that of Dodge v. Board of Education of Chicago, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57, or in Dallas v. Trammell, 129 Tex. 150, 101 S. W.2d 1009, 112 A.L.R. 997, in all of which cases the contributions to the Pension Fund were not voluntary, but the fund was provided either out of taxation, as in the Dodge Case, or was a compulsory deduction

from the petitioner's salary, as in the Pennie and Dallas Cases, and in which latter case it was held to be a transfer from one public fund to another and a retiring employee or official acquired no vested right therein, as the Pension Fund so created was subject to change or repeal by later acts of legislation.

The Insular Supreme Court, in distinguishing the present case from the Dodge Case and the Pennie Case, stated that the decisions in the Dodge and Pennie Cases were based on the fundamental fact that the petitioner had not contributed voluntarily to the fund from which the pension should be paid; but the Insular Supreme Court also recognized that Act No. 104 of 1925, under which this plaintiff was retired, "was of a compulsory nature and gave no option whatever, either to those who were already employed at that time, or to those who accepted employment in the future to waive the benefits of the statute in order to receive their salaries without any deduction," as was provided in Act 22 of the Laws of 1923, Sp.Sess.

■ In so far as the Insular Court's interpretation of the local laws are involved, we follow them unless clearly wrong, or unless inconsistent with its prior holdings. We do not disagree with its interpretation of the insular statutes so far as they are involved in this case. We only disagree as to its conclusion that the Act of 1935 violates Sec. 2 of the Organic Act of 1917.

It is agreed that the Act of 1923 was repealed by the Act of 1925, under which the contributions by an employee to the Pension Fund were compulsory and which by the Act of 1930 fixed his retirement compensation at $2000, or $166.66 monthly. The only issue, therefore, is whether the Act of 1935 reducing the petitioner's pension to $140 per month from $166.66 is a violation of Sec. 2 of the Organic Act for Puerto Rico, Chap. 145, Act of March 2, 1917, 39 Stat. 951; 48 U.S.C.A. § 737, which provides that "no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or property without due process of law, or deny to any person therein the equal protection of the laws."

■ Upon this issue the law of general jurisprudence applies.

The general rule is stated in 21 R.C.L. 242 as follows:

"The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right; and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. It is, however, conceded that where any particular payment under a pension has become due, the pensioner has a vested right to it. In some instances pension funds are maintained in part by compulsory contributions of the beneficiaries thereof. This is generally true where the beneficiaries are policemen or firemen; and in such a case the statute creating the fund ordinarily authorizes the proper official to retain weekly or monthly a certain per cent of the prospective pensioner's pay. By the great weight of authority the fact that a pensioner has made such compulsory contribution does not give him a vested right in the pension. In such cases the amount retained, though called part of the officer's compensation, he never received or controlled, nor could he prevent its appropriation to the fund."

In City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997, the court said [page 1012]:

"There is another line of decisions to the effect that, as pensions granted to employees of the state or its municipalities are purely of statutory origin, the *employees, in making contracts of employment under which the right to participate in the pension fund accrues, do so in contemplation of the reserved right of the Legislature to amend or to repeal the laws on which the pension systems are founded; and therefore the right to participate in the fund, even though arising from the contract, is based upon the anticipated continuance of existing laws.* Under this theory, there can be no vested interest in the future installments of pensions which will prevent the Legislature from repealing the law upon which the system is founded, or modifying the law in such way as to diminish the amount of future monthly payments. This is true even though the pension fund is made up partly with deductions from salaries or wages agreed to be paid participating employees. It is well settled that the mere circumstance that a part of a pension fund is made up by deductions from the agreed compensation of employees does not in itself give the pensioner a vested right in the fund, and does not make it any less a public fund subject to the control of the Legislature. State v. Board of Trustees, 192 Mo.App. 583, 184 S.W. 929, 188 S.W.

24

239; State v. Board of Trustees, 121 Wis. 44, 98 N.W. 954." (Italics supplied.)

In the case of People v. Retirement Board, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940, the court said [page 221]:

"As against the state or its political subdivisions, there is no vested right in a pension accruing in the future from month to month. * * *

"There is no contract on the part of the state to continue the payment of a benefit or annuity, and a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a person of property without due process of law within the meaning of the constitutional provisions invoked."

In the case of Dodge et al. v. Board of Education of City of Chicago et al., 364 Ill. 547, 552, 5 N.E.2d 84, 86, the court said:

"The decisions of this court have uniformly been that pensions are not based on contract but are mere expectancies based upon anticipated continuance of existing law, and that future installments of pensions are not vested property rights. It follows that the State may reduce future installments of pensions without violating the provisions of the State or Federal Constitution."

Page 555, 5 N.E.2d page 87: "The difference in nature between a lump-sum pension or award and a continued pension is obvious and is sufficient to mark the difference in the rule with reference to interest therein as found in the decisions of the courts. Under a statute such as the one in Pennie v. Reis, supra, where, on the happening of a certain event, a certain sum of money became due, the interest of the beneficiary when such event takes place is analogous to the interest of a pensioner whose installment or pension has become due under the terms of a pension act. Pennie v. Reis, supra, does not in any way militate against the rule generally adopted, that pension acts do not create in their beneficiaries a vested interest in future installments of the pensions created thereby."

In Gibbs v. Minneapolis Fire Dept. Relief Ass'n., 125 Minn. 174, 176, 145 N.W. 1075, 1076, Ann.Cas.1915C, 749, it was stated in the opinion of the court:

"As against the state there is no vested right in the pension accruing in the future from month to month. It may be taken away. The whole pension system may be abrogated without a violation of the Constitution. * * *

"'It also follows that, while there is no vested right in a pension which cannot be devested by the mere exercise of the legislative will, if relators have any rights, they are vested ones so long only as the statute in question remains in force and unchanged, subject to be devested at any time that Congress may desire.' [Rudolph v. U. S., 36. App.D.C. 379]"

In the case of Raines v. Board of Trustees, etc., 365 Ill. 610, 7 N.E.2d 489, the court said [page 491]:

"A 'pension' is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure. People v. Retirement Board, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; Porter v. Loehr, 332 Ill. 353, 163 N.E. 689; Pecoy v. City of Chicago, 265 Ill. 78, 106 N.E. 435. For this reason it is held that a pensioner has no vested right in a pension fund. It has also been held that the character of a pension fund is not changed by compulsory contributions by way of exactions from the salaries or wages of public officers and employees. It is said that such payments. into the fund are not in fact payments by the officer or employee, and the employment is accepted" [and continued] "with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has no control, and in which he has no right. * * *

"Such a fund remains at all times public money to be dispensed as a gratuity or withdrawn at will devoid of any right in the pensioner."

The Insular Supreme Court refused to follow the most recent case decided by the Federal Supreme Court of Dodge v. Board of Education of City of Chicago, 302 U.S. 74, 78, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57, in which the court said:

"In determining whether a law tenders a contract to a citizen, it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state,

the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor, and the compensation named may be altered at the will of the legislature. This is true also of an act fixing the term or tenure of a public officer or an employe of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption."

Page 80, 58 S.Ct. page 101: "Appellants admit that this is not the normal language of a contract, but rely on the circumstance that they, as teachers, especially those who voluntarily retired when otherwise they would not have been required so to do, rightly understood the state was pledging its faith that it would not recede from the offer held out to them by the statute as an inducement to become teachers and to retire, and that the use of the term 'annuities' rather than 'pensions' was intended as a further assurance of a vested contractual right. The Supreme Court answered this contention by referring to the fact that for years prior to the adoption of the Miller Law, and by a uniform course of decision, it had held that acts indistinguishable from the Miller Law, establishing similar benefit systems, did not create contracts or vested rights, and that the state was free to alter, amend, and repeal such laws, even though the effect of its action was to deprive the pensioner or annuitant, for the future, of benefits then enjoyed."

The Insular Supreme Court also refused to follow its own opinion in Lujan v. Insular Police Commission, 38 Puerto Rico 52, in which it held the petitioner had shown no vested right to his pension, although the petitioner in that case had enjoyed his pension some time before the passage of the Act cancelling it, but held on facts found in the present case similar to those in the Lujan Case that a vested right was created.

■ In this case, while the right to the pension under the Act of 1923 was optional, as he might have waived the benefits of the Act before January 1, 1924, the Act of 1925 was found by the Insular Supreme Court to be compulsory, and must be construed in accordance with the general law in such cases. It was held in the Dallas Case, supra, that where the contribution is compulsory the fund so contributed in granting a pension from it is merely the transfer from one public fund to another, as the compulsory contribution and payment never comes in the possession or control of the employee or official, while in case of a voluntary contribution, the contribution becomes the property of the employee or official and to that extent, at least, he may acquire a vested right in the fund. In case of compulsory contributions, the fund never passes from the status of public funds, the Government has an unqualified right to direct its disposition, and the employee never acquires any right therein; but it is subject to the control of the Government and may be modified or repealed by subsequent enactments.

■ We are, therefore, of the opinion that the Insular Court erred in holding that the petitioner had a vested right upon his retirement in 1931 in monthly pensions to which he was entitled only when they became due in the future under Sec. 1 of the Act of 1925, as amended by Sec. 3 of the Act of 1930; and that Sec. 11 of Act No. 23 of the Laws of 1935, Sp.Sess., was not unconstitutional as violating Sec. 2 of the Organic Act of 1917, 48 U.S.C.A. § 737.

■ It is urged by the appellee that the Civil Code of Puerto Rico (1930, Sec. 563) provides that a gift or gratuity creates a contractual relation, but by express provision this does not apply to future property, (see Civil Code, Sec. 577). This provision might apply to monthly payments in presenti or which had become due, or to a lump sum payment, but not to grants of pensions the payments of which become due in the future, as in this case.

The judgment of the Supreme Court of Puerto Rico is reversed and the case is remanded to that court for further proceedings in accordance with this opinion.