Max STEINBERG
v.
UNITED STATES.
No. 74-57.

United States Court of Claims.
July 16, 1958.

Madden, J., dissented in part.

William P. MacCracken, Jr., Washington, D. C., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

This case brings before our court the question of the constitutionality of section 2(a) of Public Law 769, 68 Stat. 1142, 5 U.S.C.A. § 740d, which reads as follows:

"There shall not be paid to any person who has failed or refused, or fails or refuses, prior to, on, or after the date of enactment of this Act, upon the ground of self-incrimination, to appear, testify, or produce any book, paper, record, or other document, with respect to his service as an officer or employee of the Government or with respect to any relationship which he has had or has with a foreign government, in any proceeding before a Federal grand jury, court of the United States, or congressional committee, or to the survivor or beneficiary of such person, for any period subsequent to the date of such failure or refusal of such person or the date of enactment of this Act, whichever is later, any annuity or retired pay on the basis of the service of such person as an officer or employee of the Government."

Plaintiff, a former employee of the Internal Revenue Service, retired on February 28, 1951, and thereby became entitled to, and did receive an annuity under the Civil Service Retirement Act, 5 U.S.C.A. § 691. As a result of an investigation into the operations of the Internal Revenue Service, plaintiff was subpoenaed to appear before a Federal

Grand Jury sitting in the Southern District of New York on September 2, 1954. On the advice of counsel, plaintiff appeared before the Grand Jury and after identifying himself invoked the protection of the Fifth Amendment to the Constitution of the United States. Subsequently, the plaintiff and others were indicted by the Grand Jury, were tried, and plaintiff was found not guilty of the offenses charged.

On August 17, 1955, plaintiff was advised by the defendant that his annuity was temporarily suspended. This suspension was eventually made permanent, effective September 2, 1954, the date of plaintiff's appearance before the Grand Jury. This action was taken pursuant to section 2(a) of Public Law 769, supra.

Plaintiff has brought this action claiming that the provision of Public Law 769 which denies to him the benefits of the Civil Service Retirement Act because he chose to invoke the Fifth Amendment does violence to his rights as a citizen of the United States under the Constitution. He therefore prays this court to declare that part of the act unconstitutional and order payment of all moneys due and owing plaintiff since the suspension of his annuity. The defendant has entered a counterclaim for all annuity payments made subsequent to plaintiff's appearance before the Grand Jury less a credit in the amount of plaintiff's retirement contributions together with interest thereon as provided by 5 U.S.C.A. § 740e. Both parties have moved for summary judgment.

The right of a Federal employee to an annuity is not born of a contractual relationship between the Government and the employee, but is more in the nature of a gratuity granted in appreciation for long and faithful service. Congress may in its wisdom modify the payments upward or downward without impairing the obligation of a contract. Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; MacLeod v. Fernandez, 1 Cir., 101 F.2d 20, certiorari denied Toste v. MacLeod, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471. Although an annuity is paid for past, as distinguished from present services, the legal relationship between the parties is in all material respects parallel since a current Federal employee neither has a vested nor a contractual right to continued employment. Even so the Supreme Court has said "that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory," Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 219, 97 L.Ed. 216. Thus we are squarely met with the question as to whether or not it is arbitrary and discriminatory for the Federal Government to exclude persons from its annuity rolls who have availed themselves of the protection provided for in the Fifth Amendment.

House Report 2488, 83d Cong., 2d sess., declaring the purpose of Public Law 769 reads:

"The purpose of this legislation is to prohibit Federal annuities or retired pay to persons who commit offenses which in effect constitute breaches of faith in matters involving (1) the improper use of their authority, power, influence, or privileges as officers or employees of the United States or of the municipal government of the District of Columbia, or (2) the violation of criminal statutes relating to treason, sabotage, subversive activities, and perjury and other offenses related to their official duties."

It is to be noted from the above that the purpose of this act was to prohibit Federal annuities to persons who *commit offenses* which in effect constitute breaches of faith in matters involving the conduct of its officers and employees. The "offense" in the case at bar was the action of plaintiff in invoking the Fifth Amendment. This, rather than an offense, is a constitutional guarantee. Thus does the taking of the Fifth Amendment constitute a breach of faith for which Congress can enact legislation

providing for a sanction against improper practices of its officers and employees? See United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. We think not.

The Fifth Amendment is the source of our constitutional rule that serious criminal charges in Federal cases must be made by an indictment of a Grand Jury and that no person shall be considered guilty until convicted by his peers.

The Supreme Court has held in Slochower v. Board of Education, 350 U.S. 551, 557–558, 76 S.Ct. 637, 641, 100 L.Ed. 692, that:

" * * * The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent * * * to a confession of guilt * * *. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances."

Congress in enacting section 2(a) of Public Law 769 has given a meaning to the Fifth Amendment which presumes guilt. This is so because Congress has linked the innocent with the guilty in exacting a form of punishment. We are compelled, by reason of the Supreme Court decisions, to hold that such a law is an indiscriminate classification of the innocent with the guilty and must fall as an assertion of arbitrary power, Wieman v. Updegraff and Slochower v. Board of Education, supra.

Furthermore, an act of Congress applying to persons such as plaintiff which inflicts punishment without a judicial trial is a bill of attainder prohibited by the Constitution. United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252; Cummings v. State of Missouri, 4 Wall. 277, 18 L.Ed. 356; Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366. In this case the punishment inflicted by the act was the denial of his annuity without due process. A bill of attainder is a legislative act which inflicts punishment without a judicial trial. If the punishment be less than death, the act is termed a bill of pains and penalties which within the meaning of the Constitution is a bill of attainder, Cummings v. State of Missouri, supra. Notwithstanding that plaintiff had no vested or contractual right to his annuity, we believe that Congress in prescribing a punishment for persons who exercised a constitutional right has acted beyond the scope of the Constitution. Congress may repeal laws which it has passed but Congress even with Presidential approval cannot repeal a constitutional provision, nor exact a penalty as a condition to the exercise of a constitutional privilege. If Congress feels that the privilege is outmoded in the conditions of this modern age, then the thing to do is amend the Constitution, not to shave it by Congressional enactments.

Courts have the duty to uphold the acts of Congress where possible and much as we regret holding an act unconstitutional, we have no alternative here.

Section 2(a) of Public Law 769, supra, must not stand as a bar to the payments of plaintiff's annuity. Plaintiff's motion for summary judgment is granted, and defendant's cross-motion denied, and the counterclaim is dismissed. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

LITTLETON, Judge, concurs.

JONES, Chief Judge (concurring).

I concur in the result, but I feel that it is necessary to point up what seems to me to be an important issue in this case which has not been touched upon by the majority.

It is a first principle in law that it is our duty to avoid passing upon the constitutionality of a statute if there are other grounds upon which we may effectively dispose of the controversy.

Keeping that principle in mind, we should note the wording of the act before us. It provides, "There shall *not be paid* to any person * * *" [em-

phasis supplied], and there then follows the provisions which the majority has held unconstitutional.

The United States Government has many obligations calling for the payment of money. Some of these arise from contract, others from statute or treaty, and still others from the Constitution itself. Generally speaking, it is within the province of the courts to determine what obligations exist and the extent thereof.

But the *payment* of these obligations is not the function of the courts. Rather, under the Constitution, the power to pay or to authorize payment of any moneys resides solely in the Congress and it is specifically provided (Art. I, § 9, cl. 7)' that,

> "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law  *  *."

Out of the three million officials of the Federal Government only 533 are elected by the people, being the 435 members of the House of Representatives, the 96 members of the Senate, the Vice President and President. All others are appointed or selected. In any government, someone must be finally entrusted with the vital responsibility of deciding when money shall be paid out. In a nation in which the source of all power is the people, it is natural that the responsibility for that decision should be lodged in the elected representatives who must come before the voters periodically to account for their stewardship. That is the very essence of democracy and the courts should be ever mindful of the source of governmental power, the careful delegations of that power, and should not lightly presume powers not given to them.

If Congress, therefore, chooses to withhold appropriations to pay the Government's obligations, or any of them, it is not within the province of the courts to pass upon the wisdom of that decision, nor is it within their power to compel Congress to do otherwise.

In the matter of a pension or gratuity there is no semblance of a contractual relationship or vested right, and the amount may be reduced from time to time by the Congress. But in the case of retirement, where contributions have been made to a retirement fund, the retirement privilege usually is a part of the inducement for remaining in the Government service. In such instances there is a definite contractual relationship which certainly becomes effective upon retirement. See Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Rafferty v. United States, 3 Cir., 1954, 210 F.2d 934. When such Government employee actually retires the obligation to make the payments becomes fully effective.

I agree fully with the concurring opinion of Judge WHITAKER, infra, that in the present case, the plaintiff, having actually retired, had a vested right (either by statute or contract) to the money for which he now sues. But, if by the act in the present case, Congress has merely withheld payment by restriction on appropriation or by a refusal to appropriate, the obligation of the United States to the plaintiff stands unimpaired, though unpaid. If this is all the act accomplishes, there is nothing to prevent the present or a future Congress from recognizing the obligation to plaintiff by appropriation and payment and neither is there anything to prevent this court from entering judgment in favor of the plaintiff for the amount of the obligation without determining constitutional questions. See. Lovett v. United States, 66 F.Supp. 142, at pages 146–148, 149, 104 Ct.Cl. 557 (opinion of Chief Justice Whaley, 582–585; concurring opinion of this. writer, 586–588), affirmed, 1946, 328 U.S. 303 at pages 318–330, 66 S.Ct. 1073, at pages 1080–1086, 90 L.Ed. 1252 (concurring opinion of Frankfurter, J.).

It seems to me, therefore, that it is our duty to determine first whether or not the act before us represents merely a restriction on appropriations or a permanent legislative bar which purports to destroy forever the obligation of the United States to the plaintiff. If it is

simply the former, the constitutionality of the act cannot, nor need it be, drawn into question. If, however, it is the latter, the question of the act's constitutionality may properly be reached.

The act before us is peculiarly worded: it is couched in terms of payment, but it is apparently unlimited both in time and in scope. Though it was apparently directed at withholding appropriations to pay persons such as plaintiff, its effect may be to deprive plaintiff of his right to receive satisfaction of the Government's obligation to him at least until further action by the Congress. It may be that,

"The language * * * goes beyond a mere limitation on appropriation and becomes, unless affirmatively repealed, a permanent denial of plaintiffs' rights * * *." Lovett v. United States, supra, 66 F. Supp. at page 149, 104 Ct.Cl. at page 587.

However, the question is a close one, and whichever horn of the dilemma is chosen the obligation to make payment remains unimpaired. If the act be construed as an intention on the part of Congress to destroy a right which became vested at the time of retirement it would be invalid. But on the other hand if, as seems likely, the intention of the Congress was merely to decline to make an appropriation so long as the condition existed, such action was clearly within the scope of its authority.

I therefore concur in the result.

WHITAKER, Judge (concurring).

I concur in the result, but since my view of the case is somewhat different from that expressed by the other judges, I submit this concurring opinion.

In the first place I think, notwithstanding the case of Dodge v. Board cf Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57, and cases in the Courts of Appeals decided since the Dodge case—I think, notwithstanding these opinions, a Federal employee who has retired from the service has a vested right in the retired pay to which he was entitled at the time of his retirement.

When an employee enters the Government service he does so relying upon the statute or regulations fixing the current compensation of the office and the amount to which he will be entitled upon retirement. So long as he remains in the Government service, Congress of course has the right to change the compensation to be paid the holder of the office, as well as the retired pay to which he will be entitled upon retirement. The employee takes the office with knowledge, actual or constructive, of the power of Congress to do this. But, after the employee has rendered the services required of him by the Government, and severs his connection with the Government, he then becomes entitled to the retired pay in effect at the time of his retirement.

This, I think, is a vested right, because it is compensation for services already rendered. Retired pay is not a pension; it is not a gratuity; it is a part of the emoluments of the office. Those emoluments are the payment periodically of the employee's current salary, less deductions for contributions to the retirement fund, etc., and also the retired pay to which the employee is entitled under the law in force at the time of his retirement.

This view is supported by Title 4, section 401, of the Act of July 31, 1956, 70 Stat. 747, known as the Civil Service Retirement Amendments Act of 1956. It is carried in the United States Code Annotated in section 2254 of Title 5. Subsection (b) of that section reads as follows:

"Consent to deductions.

"(b) Each employee or Member shall be deemed to consent and agree to such deductions from basic salary, and payment less such deductions shall be a full and complete discharge and acquittance of all claims and demands whatsoever for all regular services during the period covered by such payment, *except the*

*right to the benefits to which he shall be entitled under this chapter,* notwithstanding any law, rule, or regulation affecting the individual's salary." [Italics mine.]

Retirement pay is one of the benefits to which an employee is entitled "under this chapter." The statute means, therefore, that the Government is completely discharged and acquitted of "all claims and demands whatsoever for all regular services during the period covered by such payment," when it pays the employee his basic salary and the "benefits to which he shall be entitled under this chapter," which includes retirement pay. The Government is not discharged and acquitted of the employee's claim and demand against it until it has paid him, not only his basic salary, but also his retired pay.

Substantially this same section has been in force since the Retirement Act of 1920.

The above view is supported by the opinion of the Supreme Court of Pennsylvania in Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 106 A.2d 233, 52 A.L.R.2d 430. Beginning on page 437 of 52 A.L.R.2d there is an extensive annotation on the vested right of an employee to retirement benefits. It will be noted that many States hold that he has such a vested right.

It must be admitted that the decisions of the Federal courts are in the other direction. The earliest case is Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 151, 33 L.Ed. 426. That case would seem to lend some support to the view I have expressed above. I quote the following paragraph from the opinion in that case, calling particular attention to the portions thereof which I have italicized.

"Being a fund raised in that way, it was entirely at the disposal of the government *until, by the happening of one of the events stated,—the resignation, dismissal, or death of the officer,—the right to the specific sum promised became vested in the*

*officer or his representative.* It requires no argument or citation of authorities to show that in making a disposition of a fund of that character, *previous to the happening of one of the events mentioned,* the state impaired no absolute right of property in the police officer. The direction of the state that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was *no contract on the part of* the state that its disposition should always continue as originally provided. *Until the particular event should happen upon which the money, or a part of it, was to be paid,* there was no vested right in the officer to such payment. His interest in the fund was *until then* a mere expectancy, created by the law, and liable to be revoked or destroyed by the same authority. The law of April 1, 1878, *having been repealed before the death of the intestate,* his expectancy became impossible of realization. The money which was to pay the amount claimed had been previously transferred and mingled with another fund, and was no longer subject to the provisions of that act. Such being the nature of the intestate's interest in the fund provided by the law of 1878, there was no right of property in him of which he or his representative has been deprived." [Italics ours.]

The next case which came before the Supreme Court in which the question was raised was Dodge v. Board of Education, supra. It is not altogether clear from the opinion in this case whether it had application to people who had already retired before the reduction in retirement benefits, *or only to those still* on the payroll. I concede full power in the legislature to reduce retired benefits to people on the payroll when the Act was passed, but I deny the power of the

legislature to reduce retirement benefits to people who have severed their connection with the Government; in other words, to people who have already earned the retired pay in effect at the time of their retirement.

In addition to this, the Supreme Court, in Dodge v. Board of Education, supra [302 U.S. 74, 58 S.Ct. 100], was construing, not a Federal statute, but a State statute, which had been construed by the Supreme Court of the State, and the United States Supreme Court said that they gave "great weight to the views of the highest court of the state touching these matters."

Notwithstanding this, I must concede that this opinion leans in the direction of the doctrine that a retired employee has no vested right in the retired fund to which he was entitled at the time of his retirement.

The Court of Appeals for the First Circuit, in MacLeod v. Fernandez, 101 F.2d 20, certiorari denied 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471, expressly held that the retired pay of a retired employee could be reduced by a law passed after the date of his retirement. Rafferty v. United States, 210 F.2d 934, from the Third Circuit, held that a beneficiary under a retirement statute did not acquire a vested right in the benefits of the retirement statute until after the death of the employee. This particular case does not seem to be very much in point. But MacLeod v. Fernandez, supra, does seem to be directly in point. I do not agree with the decision in that case. If I am correct in saying that the retired pay is not a pension or a gratuity, but is compensation for services already rendered, then I think an employee's right to this retired pay does become vested at the time of his retirement.

If this view is correct, Congress has taken this vested right without due process of law. I do not think this can be gainsaid and, hence, I do not enlarge upon it.

But, if it be assumed that the foregoing position is wrong, I still think the employee who has been deprived of his retired pay because he had had recourse to the rights guaranteed by the Fifth Amendment has been denied due process of law, for this reason: The Act under consideration discriminates between employees who have not availed themselves of the rights guaranteed by the Fifth Amendment and those who have. This, I think, is an arbitrary and an unreasonable discrimination. I think so because the employee who has had recourse to the Fifth Amendment has violated no law; he has refused to discharge no legal obligation; all that he has done is to avail himself of the rights guaranteed to him by the Bill of Rights.

The Act under consideration would deprive an employee of the right guaranteed to him by the Bill of Rights. A person cannot be deprived of his property rights for any such reason, when others still enjoy those rights. I think the Act which takes away from retired employees rights to which other employees are entitled, merely because he exercises a right guaranteed to him by the Constitution, is an unjust, an arbitrary, and an unreasonable discrimination against him. See Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216; Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511.

Now, Judge MADDEN in his opinion says that a retired employee is still an employee and can be required by the Government to render it service as a condition of his right to continue to receive retired pay. I do not understand this to be the law, because I think retired pay is paid, not in consideration of services to be rendered after retirement, but in consideration of services already rendered. See Garner v. Board of Public Works of Los Angeles Board, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317.

For these reasons I concur in the result reached by Judges LARAMORE and

LITTLETON, and by the Chief Judge on somewhat different grounds.

MADDEN, Judge (dissenting).

The court gives the plaintiff a judgment. In the face of the applicable statute, the award of the judgment must be based upon the conclusion that the statute is unconstitutional and void. Placing the plaintiff's claim upon a contractual basis does not avoid the constitutional question. If a retired civil servant has contractual rights to his retired pay, Congress intended to take away those rights. Its intent that he should not get the retired pay is clear beyond question. I agree with Judge LARAMORE'S opinion that no contractual rights are present.

Meeting squarely, as I think it must, the constitutional question, the court holds the statute unconstitutional. It should not do so unless the unconstitutionality is clear. I think it is far from clear.

The statute is narrowly drawn. It applies, so far as here pertinent, only to failure or refusal to appear, testify, or produce any book, paper, record or other document with respect to one's service as an officer or employee of the Government. It applies only to inquiries by a Federal grand jury, a court of the United States, or a congressional committee.

The plaintiff says that it is incongruous on its face that one should be deprived by the Government of benefits to which he is otherwise entitled, because he has exercised a right granted to him by the Constitution itself. The problem involved in such a situation, however troublesome it might appear if the question were open, has been resolved by the Supreme Court of the United States. In Beilan v. Board of Public Education, 78 S.Ct. 1317, 1324, and in Lerner v. Casey, 78 S.Ct. 1311, 1324, it was held that the States of Pennsylvania and New York, respectively, could discharge public employees because they made use of the constitutional privilege against self-incrimination and refused to answer pertinent questions relating to their qualifications for employment. Garner v. Board of Public Works, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317, was to the same effect.

In the instant case the court relies upon Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637. But the Supreme Court in Beilan expressly distinguished the Slochower decision, pointing out that in Slochower itself the Court had been careful to warn readers that its decision was not applicable to situations such as the one previously presented by Garner and subsequently by Beilan and Lerner. The Court in Slochower said in 350 U.S. at page 558, 76 S.Ct. at page 641:

"It is one thing for the city authorities themselves to inquire into Slochower's fitness, but quite another for his discharge to be based entirely on events occurring before a federal committee whose inquiry was announced as not directed at 'the property, affairs, or government of the city, or * * * official conduct of city employees.' In this respect the present case differs materially from Garner, where the city was attempting to elicit information necessary to determine the qualifications of its employees. Here, the Board had possessed the pertinent information for 12 years, and the questions which Professor Slochower refused to answer were admittedly asked for a purpose wholly unrelated to his college functions. On such a record the Board cannot claim that its action was part of a bona fide attempt to gain needed and relevant information."

The cited cases leave no room for doubt that if the instant plaintiff had been actively employed as a tax attorney of the Government at the time he refused to answer the grand jury's questions as to his official conduct, he could have been discharged, either administratively for the good of the service, or pursuant to a

statute, if there had been an applicable statute. The only possible ground, then, on which the plaintiff may escape the teachings of the Supreme Court decisions is that his status was that of a retired employee, rather than an active one.

As Judge LARAMORE'S opinion holds, the plaintiff had no vested contractual right to the statutory retired pay. Congress could have, by a generally applicable statute, reduced the retired pay of all retired employees. Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57. It could provide that all former employees able to do so should, in order to continue to be entitled to retired pay, render services to the Government in cases of specified emergencies. By the statute here in question Congress has provided that, in order to continue to be entitled to retired pay, all former employees shall furnish information with respect to their service as officers or employees of the Government, if called upon to do so by a Federal grand jury, a Federal court, or a committee of Congress.

Congress decided that retirement should not relieve the retired employee, who was still drawing pay because of his former active service for the Government, from telling the Government what he had learned about the Government's business while he was on its active payroll. It decided that if a retired employee was unwilling to respond to the Government's proper inquiries as to his conduct when he was working actively for the Government, the Government should not have to respond to his monthly requests for his pay check. The decision of Congress was so eminently fair and sensible that there is nothing to be said against it, once the philosophical problem adverted to at the beginning of this opinion has been solved. That problem has been solved by the Supreme Court. It seems to me that it is a contradiction of obvious fact to hold that the statute here in question is so clearly arbitrary and lacking in reason as to be unconstitutional.