**NATIONAL TREASURY EMPLOYEES UNION, et al., Plaintiffs,**

v.

**Donald J. DEVINE, Director, Office of Personnel Management, Defendant.**

**NATIONAL ASSOCIATION OF RE-TIRED FEDERAL EMPLOYEES, et al., Plaintiffs,**

v.

**Donald J. DEVINE, Director, Office of Personnel Management, Defendant.**

**Civ. A. Nos. 81–2061, 83–2097.**

United States District Court, District of Columbia.

July 20, 1984.

Robert M. Tobias and Kerry L. Adams, National Treasy. Empls. Union, Washington, D.C., for plaintiffs in No. 81–2061.

Irving Kator and Joseph B. Scott, Washington, D.C., for plaintiffs in No. 83–2097.

Paul Blankenstein and Stephanie Golden, Dept. of Justice, Civ. Div., Washington, D.C., for defendant in No. 81–2061.

Theodore Grossman, Dept. of Justice, Washington, D.C., for defendant in No. 83–2097.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

The related cases of *National Treasury Employees Union (NTEU) v. Devine* and *National Association of Retired Federal Employees (NARFE) v. Devine* are before this Court on defendant's motion to dismiss in each case; NTEU's motion for partial summary judgment; and NARFE's motion for summary judgment. Both cases arise out of amendments to the Civil Service Retirement Act, 5 U.S.C. § 8331, et seq. In 1962, P.L. 87–793 provided for an automatic adjustment in federal retirees' annuities whenever the Consumer Price Index rose by a predetermined growth factor. After several amendments, in 1976 Congress enacted P.L. 94–440 which provided for full cost-of-living adjustments (COLA) to be made twice annually for all annuitants.

In January 1981, P.L. 96–449 § 401 altered the first-year COLA for federal civil service retirees so that they now received a pro rata share of the first six months' adjustment based upon the month in which the employee retired, rather than the full amount of the twice-yearly adjustment. In July 1981, P.L. 97–35 § 1702(a) eliminated the twice-yearly COLA and substituted a single annual adjustment which would again be calculated as a pro rata share of the yearly increase based upon the month of the employee's retirement. NTEU and NARFE question the constitutionality of the elimination of the twice-yearly COLA as a taking of private property without just compensation (Fifth Amendment) and as a violation of the contract clause (Art. I, § 10, as applicable to the federal government by the due process clause of the Fifth Amendment) by allegedly abrogating the plaintiffs' property right or implied contract to a twice-annual COLA. It is material that plaintiffs Martin G. Weitzel, James F. Ruddy and Harold J. Oland are the only plaintiffs in the NTEU action who retired prior to the enactment of § 1702(a). The remaining plaintiffs in the NTEU action are still employed by the federal government. NTEU seeks declaratory judgment that § 1702(a) of P.L. 97–35 is unlawful; an injunction against application of the same; or money damages and the opportunity to be reinstated into equivalent positions.

The assertions of plaintiffs in the NARFE action fully complement those of NTEU and add additional counts as to the following legislation. In September 1982, P.L. 97–253 § 301(a) diminished COLAs for persons who retired before age 62 from fiscal year 1981 through fiscal year 1985. All plaintiffs in NARFE retired prior to January 1981 and all are age 61 or less. NARFE asserts that P.L. 97–253 is a violation of the equal protection component of the Fifth Amendment due process clause as invideous discrimination on the basis of age. Further, NARFE seeks declaratory judgment that P.L. 96–499 § 401, which eliminated the full COLA adjustment for persons who retired during the six-month COLA period and required that the first annuity adjustment be computed on a pro-rated basis, is unlawful as a taking of property without just compensation and as a violation of the contract clause. NARFE seeks declaratory judgment that the following provisions are unlawful and permanent injunction preventing their application; P.L. 96–499 § 401; P.L. 97–35 § 1702(a); and P.L. 97–253 § 301(a).

## I. COLA FORMULA—NOT A PROPERTY RIGHT

The issue before this Court is whether Congress intended federal civil service annuitants to have a compensable property right in the COLA formula in effect at the time of their retirement. It is clear that the Constitution alone does not create any property interest. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Whether a guarantee of property has been given must be determined through an examination of the particular statute. *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The pertinent statutory provision, 5 U.S.C. § 8334(b), has been interpreted differently by each party

as to whether Congress embodied in the act a guarantee against changes in the level of annuity benefits. That section provides:

Each employee or Member is deemed to consent and agree to these deductions [i.e., percentage deductions mandated by § 8334(a)] from basic pay. Notwithstanding any law or regulation affecting the pay of an employee or Member, payment less these deductions is a full and complete discharge and acquittance of all claims and demands for regular services during the period covered by the payment, *except the right to the benefits to which the employee or Member is entitled under this subchapter.*

*Id.* (emphasis added). Plaintiffs interpret this language to demonstrate that retirement benefits (including COLAs) are deferred compensation since they are "under this subchapter." However, the defendant interprets the emphasized language to indicate that Congress did not intend to guarantee an employee the level of benefits in effect at the time of retirement. The defendant asserts that this language should logically be interpreted to include the concept of periodic amendment to the subchapter. The defendant relies for support on *Dodge v. Board of Education,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937), where the Court upheld the constitutionality of a state statute decreasing annuity payments to retired teachers. The Supreme Court examined the language of the statute at issue which had no clause explicitly permitting revision of benefits. The Court found no guarantee by the state to a particular level of benefits stating that "[t]he presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Id.* at 79, 58 S.Ct. at 100. Further, in the field of national economic policy, strong deference is to be accorded legislation against a due process attack. *Pension Benefit Guaranty Corp. v. Gray,* — U.S. —, —, 104 S.Ct. 2709, —, 81 L.Ed.2d 2718 (1984). Legislative acts "adjusting the burdens and benefits of economic life ... [have] a presumption of con-

stitutionality ...." *Id.* 428 U.S. at 10, 96 S.Ct. at 2890 *quoting Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). This analysis is equally applicable to the taking clause of the Fifth Amendment.

The statute at issue contains no explicit provision either permitting or disallowing revision of the level of benefits. The plaintiff emphasizes this lack of a permissive amendment provision by indicating that case law determining that no vested right exists to Social Security benefits noted that the Social Security Act reserves to Congress the right to alter, amend or repeal any provision. 42 U.S.C. § 1304. However, the CSRA directs the civil service Board of Actuaries to study the retirement system and to recommend to Congress and the Office of Personnel Management "such changes as in the Board's judgment are necessary to protect the public interest and maintain the System on a sound financial basis." 5 U.S.C. § 8347(f). The defendant asserts that such language is incompatible with plaintiff's interpretation which would freeze the level of benefits for each employee when he reaches retirement age. Defendant relies on *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), in which the Supreme Court read into the Railroad Retirement Act an amendment provision similar to the Social Security Act's provision permitting alteration of retirement benefits. The Court relied upon the similarity of the acts for this interpretation. In comparison to *Hisquierdo,* the statute in the pending cases before this Court presents a more compelling basis for reading an amendment provision into CSRA due to the forthright statement in 5 U.S.C. § 8347(f).

The plaintiffs assert that the legislative history of the 1920 Retirement Act supports the view that retirement benefits are deferred compensation. Plaintiffs cite statements of Congressmen who indicated the purpose of the 1920 pension bill as compensation. *See, e.g.,* 59 Cong.Rec.Pt. 6, p. 6300 (R. Hammil) ("Pensions are not gratuities, and they should not be con-

sidered as such"); 59 Cong.Rec.Pt. 6, p. 6378 (R. Mann) (stating that the benefits are "part and parcel of the subject of the wage you pay" and an inducement to keep employees in government service).

The defendant relies upon the legislative history of the Postal Service and Federal Employees Salary Act of 1962, the statute creating the COLA formula to which plaintiffs claim an entitlement, to indicate the error of plaintiffs' position. The purpose of the 1962 Act was stated as providing the COLA formula for "persons now on the retirement rolls." S.Rep. No. 2120, 87th Cong., 2d Sess. (Sept. 24, 1962), *reprinted in* 1962 U.S.Code Cong. and Ad.News 3034, 3035. The defendant's argument is that the language indicates that the COLAs were not deferred compensation, since giving it to those already on the rolls precludes any *quid pro quo* which hallmark compensation. The plaintiff rebuts with the argument that Congress was protecting both groups against inflation and "[w]hat is deferred compensation for one group could be something of a more altruistic nature for the other." (NTEU's Motion for Partial Summary Judgment at 15, citing no authority.)

However, one of the primary problems Congress identified under the COLA provisions of the Civil Service Retirement Act was the need to effectively monitor the dates of retirement. At the time the "look back" provision was enacted, COLA increases were made every six months and employees retiring within that period received no part of the COLA for that period. *See* S.Rep. No. 93–456, 93d Cong., 1st Sess. (1973), *reprinted in* 1973 U.S.Code Cong. and Ad.News 2316. As a result, employees tended to retire just before the beginning of a new COLA period:

Experience demonstrates that employees who had been planning to retire later, although eligible, almost invariably change their plans to retire just prior to the effective date of each cost-of-living increase in order to benefit from it. In the most recent instance, the increase effective July 1, 1973, nearly 90,000 em-

ployees choose [sic] to retire simultaneously, or nearly so. This massing of retirements works to place a burden on the Civil Service Commission and also to delay the processing of claims.

*Id.* at 2317. The law was amended to provide full COLAs without regard to the date within any six month COLA period that the employee retired:

What H.R. 3799 proposes to do, then, is to obviate the eligible employee's incentive to retire solely to benefit from a cost-of-living increase in annuity payments and thus correct the abnormal conditions occasioned by large numbers of concurrent retirements in the Civil Service. Also, H.R. 3799 will correct an anomaly occasioned by the provisions of the present law, whereby an employee retiring after the effective date of a cost-of-living increase may receive a smaller annuity even though the former may have longer tenure or the same or higher high-three average salary. The same anomaly exists with respect to survivor's annuities.

*Id.* The defendant further notes that the Civil Service Retirement Act of 1920 enabled federal workers to become eligible almost immediately upon enactment of the Act. 41 Stat. 614. This lack of *quid pro quo* supports the defendant's assertion that the annuities corresponded solely to a moral debt and were not compensatory. This Court does not reach the merits of whether all CSRA benefits are compensatory or not. The ruling is strictly limited to whether there is a protected property interest in the COLA benefits.

■ Plaintiffs rely primarily on *Kizas v. Webster*, 707 F.2d 524 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), to establish the vested nature of COLA benefits. In *Kizas*, clerical employees of the FBI alleged that they had accepted positions with the understanding they would be given a preference for advancement to the position of Special Agent. This preference was later abolished. *Id.* at 530. In concluding that the preference was merely an expectancy, the

court stated that what constitutes compensation can only be determined by reference to the statute. *Id.* The court noted that Title 5 sets forth the *"exclusive* source[s] of employees' compensation rights" and that they "govern all incidents of employee compensation, including ... retirement benefits ...." *Id.* (emphasis in original). However, the court stated that there is a clear difference between entitlements for procedural due process purposes and indefeasible rights. A legitimate claim of entitlement to a benefit creates a due process guarantee, however, it does not necessarily rise to the level of property protected by the takings clause. *Id.* at 539. *See Pension Benefit Guarantee Corp. v. Gray, supra* at 2718 ("legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations"). The court stated that due process interests in public benefits are limited by Congress' power to remove the underlying source of those benefits. *Id.*

▇ Plaintiffs also rely upon *American Postal Workers Union v. United States Postal Service,* 707 F.2d 548 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984) [hereinafter APWU]. As in *Kizas, APWU* concerned entitlement to benefits and the due process clause of the Fifth Amendment, not the takings clause. *APWU* involved a challenge to actions taken by the Office of Personnel Management in changing the method by which civil service retirement annuities would be calculated for a particular category of postal workers retiring after a certain date. The court held that a "protected interest in retirement benefits arises only at the point when the federal employee actually retires ...." *Id.* at 554. "Until the employee becomes eligible for benefits as prescribed by the Act, his or her rights are subject to any lawful changes made to the Act from which the claim of entitlement arises." *Id.* From this language it is clear that it is appropriate to grant the defendant in the *NTEU* case summary judgment against those plaintiffs who had not retired by the time the amendment was enacted. Those defendants had no due process entitlement to the benefits which were subject to lawful change.

The language in *APWU* interpreted differently by the plaintiffs and defendant in the instant action is the following:

A retiree who meets these eligibility requirements acquires an interest protected by the due process clause in benefits at the level provided by the law in effect at the time he or she becomes eligible.

*Id.* at 554. Plaintiffs state that this language indicates that after retirement, benefits constitute property for the purposes of the Fifth Amendment's due process protections. Plaintiffs then stress the *Kizas* decision as concluding that retirement benefits rise to the level of property under the takings clause. It should be noted that the language in *Kizas* was dicta since the status of retirement benefits under CSRA was not at issue.

The defendant correctly notes that entitlement for retirement benefits in *APWU* was only for the purposes of the due process clause and further notes that the court did not hold that Congress was forbidden from amending the statute or changing the benefits of retirees. This interpretation is supported by *Kizas* which distinguished entitlement for purposes of due process from the takings clause. *Kizas v. Webster, supra* at 539.

Plaintiffs further cite Judge Jones' concurring opinion in *Steinberg v. United States,* 163 F.Supp. 590 (Ct.Cl.1958), that contributions to a retirement fund by an employee were inducements forming a contractual relationship which becomes effective upon retirement. *Id.* at 593. Judge Jones further stated that an employee has a vested right to benefits accrued at the time of retirement. *Id. Steinberg* involved a due process challenge to a statute denying civil service retirement benefits to an annuitant who claims his fifth amendment privilege before a grand jury. The two-judge majority opinion stated that the CSRA benefits were gratuities and thus not vested. Judge Madden's dissent stresses that "Congress could have, by a general-

ly applicable statute, reduced the retired pay of all retired employees." *Id.* at 598 citing *Dodge v. Board of Education, supra.*

The defendant relies primarily on *Stouper v. Jones*, 284 F.2d 240 (D.C.Cir.1960) for the assertion that no property right to retirement benefits exists which cannot be amended. In *Stouper*, a civil service employee retired under the disability provisions of CSRA and challenged the discontinuance of her annuity by a congressional amendment to CSRA passed after her retirement. *Id.* The court held that "an employee has no right under the Retirement Act based on contractual annuity principles and ... the appellant had no vested right to the disability annuity which was terminated." *Id.* at 243. The court noted that CSRA benefits are not based on an employee's contributions but rather on the employee's earning record and years of service. *Id.* Applicable to the present controversy, the court stated that "[i]t is well settled that a pension granted by the Government confers no right which cannot be revised, modified or recalled by subsequent legislation." *Id.* at 242.

Plaintiffs attempt to distinguish *Stouper* since it involved the disability provisions of CSRA rather than the basic annuity provisions. However, *Stouper* generally stated that CSRA does not guarantee any particular level or formula of benefits, and that an annuitant does not have a property right to continue to receive benefits pursuant to the formula that was in effect at the time the annuitant retired. *Stouper* is controlling precedent in the instant case.

■ In summary, the plain meaning of the statutory language in 5 U.S.C. § 8334(b) supports the defendant's interpretation. The statutory provision granting authority to the Board of Actuaries to recommend measures to protect the financial structure of CSRA further supports the defendant's interpretation of the gratuitous nature of the benefits. The congressional remarks during the passage of the 1920 CSRA concerning the compensatory nature of CSRA benefits should be compared to the fact that benefits were immediately bestowed upon annuitants at the time the act became effective. Further, a stated purpose of amending the COLA was to stop mass retirement prior to the effective date of each COLA increase. The lack of *quid pro quo* lessens the strength of a deferred compensation argument. The case law presented by the parties supports the defendant. *Stouper* is a persuasive and closely analogous case dealing specifically with CSRA. Further, there is logical consistency inherent in the defendant's argument. *APWU* clarifies that benefits may be altered for those not yet retired and entitled thereto. As to retirees, the plaintiffs' theory would bind the government into an entitlement obligation that could be forever increased by an unmodifiable formula. A ruling in favor of the plaintiffs' entitlement theory would be contra to *Stouper* and counter to Supreme Court rulings concerning benefits in other retirement statutes. The Supreme Court has held that Congress never guaranteed any specific level of benefits under the Railroad Retirement Act. *See, e.g., U.S. Railroad Retirement Board v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), the Social Security Act, *see Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), or for veterans' pensions, *see United States v. Teller*, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352 (1882). The defendant's motion to dismiss will be granted as to NTEU's and NARFE's claim concerning P.L. 97–35 and will be granted as to NARFE's claim concerning P.L. 96–499.

## II. EQUAL PROTECTION—AGE DISCRIMINATION CLAIM

In September 1982, Congress provided that for fiscal year 1983 through fiscal year 1985 annuitants under the age of 62 years would receive smaller annual COLAs than those given to annuitants over 62 years. The issue is whether P.L. 97–253 violates plaintiffs' rights to equal protection by discriminating on the basis of age. The Supreme Court in *Massachusetts*

*Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), indicated that finding a rational basis for the legislation was the appropriate standard of review. *Id.* at 174–76. *See also Vance v. Bradley,* 440 U.S. 93, 96–97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *Jefferson v. Hackney,* 406 U.S. 535, 549, 92 S.Ct. 1724, 1733, 32 L.Ed.2d 285 (1972).

The government has claimed as a rational basis for discrimination the attempt to conserve federal funds. Plaintiffs rely upon *Gault v. Garrison,* 569 F.2d 993 (7th Cir.1977), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1977), in which the government attempted to justify age discrimination against teachers age 65 or over on the basis that the action would remove unfit teachers. The court denied the government's motion to dismiss since as an evidentiary matter, the state had not shown a rational basis for the legislation other than their conclusory remarks. *Id.* at 996. *Gault* distinguished *Murgia* in which an evidentiary record showed the state's purpose and how the legislation related to that purpose. *Id.*

The plaintiffs also suggest that a "heightened scrutiny" test be adopted for evaluating classifications based upon age. This suggestion is not only contra to the standard set forth in *Murgia* but would make it difficult for Congress to make choices for governance if the government had to show the validity of line-drawing based on age in retirement statutes. Retirement statutes, by their nature, discriminate by age.

Plaintiffs have not shown cause for this Court to depart from the *Murgia* rational basis standard of review. Legislative history indicates that the statute was enacted to conserve federal funds. Further, legislation withstands an equal protection challenge if a court can find any rational basis upon which to uphold the questioned legislation since a court does not sit in place of the legislature concerning the desirability of legislation. In *Moreno v. United States Department of Agriculture,* 345 F.Supp. 310 (D.C.Cir.1972), *aff'd,* 413 U.S. 528, 93

S.Ct. 2821, 37 L.Ed.2d 782 (1973), the court held that if a "statutory classification is not relevant to the stated purposes of the act, it is invalid under the equal protection clause, *unless* it is justifiable by reference to an independent purpose which a court may think it proper to impute to Congress." *Id.* at 313–14. The court stated the general rule that "in the field of economic and social legislation, judges should exercise their ingenuities to the utmost in order to save a statute against constitutional attack ...." *Id.* at 314. The court in *Moreno* declined to exercise the general rule, however, since the rationale a court could devise would be Congress' wish to legislate morality which could not in that case supercede the privacy rights to freedom of association in the home that were at stake. Nevertheless, the general rule should apply to the instant proceeding in which a conflicting constitutional protection is not at issue. Further, in *Owens v. Brown,* 455 F.Supp. 291 (D.D.C.1978), J. Sirica stated that "there is no requirement that the Court must overlook unexpressed legislative objectives that reasonably could have formed the basis of the statute in question." *Id.* at 306 n. 55.

■ Congress could have logically assumed that persons 62 years and younger will be able to supplement their reduced benefits through other work. There is no direct evidence to support this claim although Congress could have found that those older than 62 years have less job opportunity and that therefore line-drawing at 62 was rational and necessary to conserve the federal retirement funds. The government would be unnecessarily burdened by a *Gault* requirement that evidence beyond mere rationality must be provided to sustain a motion to dismiss. The government has met the burden of demonstrating mere rationality, and, therefore, it is this 19th day of July, 1984,

ORDERED that defendant's motion to dismiss is hereby granted with respect to the equal protection claim of NARFE; and it is

FURTHER ORDERED that defendant's motion to dismiss is granted as to NTEU's and NARFE's claim concerning P.L. 97–35 and granted as to NARFE's claim concerning P.L. 96–499; and it is

FURTHER ORDERED that Civil Action No. 81–2061 and Civil Action No. 83–2097 are hereby dismissed with prejudice.