**DISTRICT OF COLUMBIA RETIREMENT BOARD, et al., Plaintiffs**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–3693.

United States District Court, District of Columbia.

April 6, 1987.

Dennis G. Linder, Dina R. Lassow, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiffs.

Vincent H. Cohen, Walter A. Smith, David F. Grady, Kevin N. Whitney, Hogan & Hartson, Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiffs[1] brought this action against the United States to establish ultimate responsibility for the present unfunded liability of the District of Columbia Pension Plan. Defendant[2] has moved to dismiss this case, contending that this Court lacks jurisdiction under the Tucker Act, plaintiffs' claims are not ripe for review, and plaintiffs fail to state a claim for relief. In addition, defendant has moved for summary judgment on Count III of the complaint. Oral argument was heard on March 30, 1987. For the reasons stated below, the Court grants defendant's 12(b)(6) motion as to Count IV, and grants defendant's 12(b)(1) motion as to the remaining counts.

## BACKGROUND

The pension plan statute at issue covers three separate funds: the police officers and fire fighters' fund, the teachers' fund, and the judges' fund. Originally, Congress established pension plans for these employees pursuant to its plenary power to legislate for the District of Columbia under Art. I, § 8, cl. 17 of the U.S. Constitution. The plans were funded on a "pay as you go" basis, with any additional funds necessary to come from the District. In a "pay as you go" system the funds are not fully invested and no provision is made for projected liabilities. To the extent current contributions cannot meet current obligations, the resulting shortfall is made up each year from general revenues or other stop-gap sources. The "unfunded liability" herein is that figure that represents projected future obligations for pension payments to District employees for which no revenues have been provided under the current statute. Plaintiffs allege that the present value of the total unfunded liability at issue is $5.3 billion.

After grant of Home Rule to the District of Columbia, Congress took up legislation that would allocate the relative liability for the pension system. In the District of Columbia Retirement Reform Act of 1979 ("Reform Act") D.C.Code §§ 1–701 *et seq.*, Congress established three funds and authorized an annual appropriation of $52.07 million per year to meet what the statute defined as the "federal share" of the unfunded liability. D.C.Code § 1–724(a). The "federal share" is further defined as 80% of the unfunded liability for pre-Home Rule retirement pensions, and 33⅓% of the unfunded liability for pre-Home Rule disability pensions. D.C.Code § 1–724(e). The statute provides for payment annually from 1980 through 2004, and also provides that the Comptroller General shall determine in 2004 whether the statutorily appropriated amounts were sufficient to meet the "federal share." *Id.* Plaintiffs do not contend that the specific dollar amounts authorized by the Act have not been appro-

---

1. Plaintiffs are the District of Columbia Retirement Board, Arthur M. Reynolds, Bonnie R. Cohen, Orlando W. Darden, Sr., James W. Dyke, Jr., Solomon Kendrick, Thomas P. King, Garland C. Liskey, Harriette T. McGinnis, E. Fillmore Mitchell, and Thomas J. Scherer, all of whom are members of the Board; and the District of Columbia's Deputy Mayor for Finance, an *ex officio* member of the Board. All individual plaintiffs are either active or retired District of Columbia employees.

2. The only named defendant is the United States of America. No allegation expressly seeks to impose liability on an officer or agency of the United States.

priated. They assert, however, that the appropriated amount falls short of the percentage federal share of the unfunded liability by $15 million per year.

The Reform Act also provided that any D.C. Pension assets remaining in the original pension funds and not paid out were to be transferred to the newly established, parallel funds. D.C.Code §§ 1–713, 1–714. Plaintiffs assert that the amount of pre-Home Rule contributions to these funds is $359 million, and they claim that the United States has failed to transfer these contributions to the Board.

On November 18, 1985 plaintiffs filed this action, which was immediately stayed to permit settlement negotiations to continue. Plaintiffs filed the same complaint in the United States Claims Court contemporaneously, which continues under a stay. Plaintiffs contend that defendant has failed to transfer the accumulated Fund contributions or to appropriate enough money to meet the federal share of the obligation. Based on these actions and the enactment of the Reform Act, plaintiffs allege (1) breach of contract, (2) breach of fiduciary duty, (3) taking without just compensation, in violation of the fifth amendment, (4) statutory deprivation of property without due process of law, and (5) violation of the Reform Act's federal share provision, D.C. Code § 1–724(e). Plaintiffs invoke this Court's jurisdiction under general federal question jurisdiction, 28 U.S.C. § 1331, the Tucker Act, 28 U.S.C. § 1346(a)(2), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

No settlement was reached, and once the Court lifted the stay herein, the United States moved to dismiss under Fed.R.Civ.P. 12(b)(1), contending that the United States Claims Court has exclusive jurisdiction, and under Fed.R.Civ.P. 12(b)(6), on the grounds that no claim for relief is stated. The parties fully briefed the motion, and the Court heard oral argument on March 30, 1987.

## DISCUSSION

■ In reviewing a motion to dismiss the Court must take all factual allegations of the complaint as true, and in the context of a 12(b)(6) motion, must draw all factual inferences in plaintiffs' favor. *E.g., Doe v. U.S. Department of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985). A motion to dismiss under Rule 12(b)(1), on the other hand, calls the jurisdiction of the Court into question, and the plaintiffs will bear the burden of establishing that jurisdiction is proper. *See, e.g., KVOS, Inc. v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936). Plaintiffs' factual allegations in the complaint thus will bear closer scrutiny in resolving a 12(b)(1) motion. *E.g., Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir. 1986). With these principles in mind, the Court shall review defendant's motion.

### A. *Lack of Jurisdiction Under the Tucker Act*

■ The Tucker Act gives the Claims Court jurisdiction over claims against the United States founded upon the constitution, an Act of Congress, an agency regulation, or a contract with the United States, seeking damages in non-tort cases. 28 U.S.C. § 1491(a)(1). The District Courts have concurrent jurisdiction over these claims, to the extent they do not exceed $10,000. 28 U.S.C. § 1346(a)(2). Although the Act does not further clarify this allocation of jurisdiction, it is generally held that the Claims Court has exclusive jurisdiction over claims exceeding $10,000. *E.g., Hahn v. United States*, 757 F.2d 581, 585–86 (3rd Cir.1985). Thus, to the extent that plaintiffs' claims seek more than $10,000 from the federal government, they must be brought in the Claims Court, even if they could be brought under another jurisdictional grant such as § 1331. *Id.* The reason for this strict application of the statute is that the United States has waived sovereign immunity for such claims only under the terms of the Tucker Act, and unless a separate waiver of sovereign immunity can be found for the claims, they cannot be brought. *Id. See also United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). As the Claims Court has only limited power to grant equitable relief, however, plaintiffs seeking such re-

lief are not required to obtain redress in the Claims Court. Plaintiffs allege that because they seek only equitable relief, this Court can properly exercise jurisdiction under the Tucker Act. In addition, they assert that the Court has independent jurisdiction over their claims based on section 1331 and the APA.

■ In determining whether plaintiff's claims are within the Claims Court's exclusive jurisdiction, the Court must look beyond the pleadings to the actual nature of the relief they seek. *E.g., Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967 (D.C.Cir.1982). With the exception of Count IV, plaintiffs request declaratory relief that would establish the monetary liability of the federal government, triggering Claims Court jurisdiction. Equitable relief that determines monetary liability of the federal government would not deprive the District Court of jurisdiction under the Tucker Act, however, if plaintiffs can establish that the equitable relief serves a significant purpose, independent of and in meaningful addition to any monetary relief.[3] *E.g., Ramirez de Arellano v. Weinberger,* 745 F.2d 1500, 1533 (D.C.Cir.1984), *vacated on other grounds,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985), *on remand,* 788 F.2d 762 (D.C.Cir.1986) (dismissed as moot); *Hahn,* 757 F.2d at 589. Conversely, if injunctive/declaratory relief is merely incidental to the monetary relief, and does nothing more than establish the plaintiffs' legal entitlement to money without expanding the relief "in any meaningful way," their claims will be within the Claims Court's exclusive jurisdiction. *E.g., State of Minnesota by Noot v. Heckler,* 718 F.2d 852, 859–60 n. 13 (8th Cir.1983).

■ Relying on *Hahn, Ramirez,* and *Minnesota,* plaintiffs assert that the declaratory relief they seek has "indepen-

dent, prospective significance," claiming that a declaration of federal liability for the Pension Fund would facilitate negotiations and possible settlement with Congress, and would eliminate the "stigma" the Board bears because it cannot ensure adequate pension funding. They have not shown how the future conduct of plaintiffs or District of Columbia employees would be affected by a declaratory judgment. No court has premised the District Court's exercise of jurisdiction to grant equitable relief upon such tenuous prospective benefits. Plaintiffs admit that they seek specific dollar amounts, and have not shown what relief this Court could fashion that would not immediately result in monetary liability for the United States. The speculative possibility of extra-judicial compromise among the parties, wherein no money would be paid, is an insufficient basis for District Court jurisdiction in the face of the Tucker Act. Further, as there is no agency action at issue within the meaning of the APA, plaintiffs' alternative basis for jurisdiction must also fail. Taking all the allegations of the complaint as true, and drawing all inferences in plaintiffs' favor, the Court concludes that Counts I, II, III, and V are within the Claims Court's exclusive jurisdiction and must be dismissed.[4]

## B. *Failure to State a Claim*

■ In Count IV, plaintiffs assert that the Reform Act's allocation of Pension Fund liability has deprived them of protected property in violation of the fifth amendment's guarantee of substantive due process. As plaintiffs do not seek monetary relief for this claim, it does not fall within the Claims Court's exclusive jurisdiction. The due process claim suffers from a more fundamental defect, however. Plaintiffs

---

3. Equitable relief may have the "independent significance" needed for District Court jurisdiction, and still be used subsequently to obtain an award of damages in the Claims Court, without depriving the District Court of jurisdiction. *See Hahn,* 757 F.2d at 589; *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981). Although plaintiffs make much of this latter principle, the "subsequent use" rule does not confer jurisdiction on the District Court—it sim-

ply does not preclude the exercise of otherwise appropriate jurisdiction. Plaintiffs must still establish the "independent significance" of the equitable relief they seek.

4. Defendant's motion for summary judgment on Count III is therefore moot, and the Court intimates no ruling on the merits of the claim or of defendant's motion.

seek due process protection for their statutory retirement and disability benefits. It is uniformly held that such benefits are not "property" sufficient to trigger substantive constitutional protection. *E.g., Zucker v. United States,* 758 F.2d 637 (Fed.Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985); *Stouper v. Jones,* 284 F.2d 240, 242 (D.C.Cir.1960); *National Association of Retired Federal Employees v. Horner,* ("*NARFE*") 633 F.Supp. 511 (D.D.C.1986) (three-judge panel); *National Treasury Employees Union v. Devine,* 591 F.Supp. 1143, 1147 (D.D.C.1984).[5] Absent any "property" to protect, the due process claim must be dismissed.

An order consistent with the above conclusions accompanies this opinion.

## ORDER OF DISMISSAL

Upon consideration of defendant's motion to dismiss, plaintiffs' opposition and response, defendant's reply and surrebuttal, the accompanying memoranda, and argument of counsel, it is this 6th day of April, 1987,

ORDERED that

1) defendant's motion to dismiss Counts I, II, III, and V under Fed.R.Civ.P. 12(b)(1) is granted, and these Counts are dismissed without prejudice to the action pending in the Claims Court; and

2) defendant's motion to dismiss Count IV of the complaint under Fed.R.Civ.P.

12(b)(6) is granted, and Count IV is dismissed with prejudice.

---

5. The Court has determined that federal law should apply in this analysis, as the statutes determine federal liability under economic legislation and thus involve principally a federal interest Plaintiffs argue that the Acts should be treated as "state law," because they were enacted pursuant to Congress' plenary power to legislate for the District of Columbia under Art. I, § 8, cl. 17 of the U.S. Constitution. Accordingly, they reason, this Court should defer to the District of Columbia Court of Appeals' interpretation of the Reform Act, rather than federal law, to determine whether the statute grants protected property rights. *E.g., Hall v. C & P Telephone Co.,* 793 F.2d 1354, 1358 (D.C.Cir. 1986). Plaintiffs would have the Court apply *McNeal v. Police & Firefighters' Retirement & Relief Board,* 488 A.2d 931 (D.C.App.1985), for the proposition that Reform Act benefits are

protectable "property" under the fifth amendment. Even if the Court were to agree that the Acts are "local" and that deference is due to the D.C. Court of Appeals, the outcome would be the same. *McNeal* looks to federal law and finds a property interest in the benefits for procedural due process purposes only. *Id.* at 935–36. The court squarely stated the limits of this protected interest, noting that a benefit recipient does "not have a protected expectation that Congress would never [again] legislate in the area of disability benefits." *Id.* at 936. This result is no different than that discussed at length in *NARFE,* 633 F.Supp. 511. Thus, even under a "local law" analysis, plaintiffs have failed to establish a property interest warranting substantive protection under the fifth amendment.